Page 38

1   Q. I understand there are standards for making
2   sidewalks. We talked about settling. We talked about
3   freezing. I'm going to assume tree roots can push out
4   pieces of sidewalk?
5       A. Yes, they can.
6   Q. Is that a code violation when the piece of
7   sidewalk becomes unlevel with the adjoining piece?
8       A. Yeah, I would -- I would say that it would be a
9   code violation.
10  Q. Is there any enforcement of those violations?
11  Is that something, you call the Municipality of Anchorage
12  and they'll enforce the code?
13      A. No. You could call them, and they probably
14  should -- I -- I guess I don't have an opinion on that,
15  because I haven't done it, so --
16  Q. If you were the officer to say that this
17  sidewalk was a code violation, what provision would you
18  cite?
19      A. I would go back to the sections that say that --
20  that the maximum difference in elevation that you're
21  allowed on any path of egress is a half-an-inch. And
22  that happens at doorways or thresholds. And that's the
23  exception that's made because, as a practical matter, you
24  need to have a threshold in a doorway.
25  Q. Now, in your report you cite section 1008.1.6

Page 39

1   for thresholds. Where is the provision that says
2   sidewalks can't be out of level? Or that -- is there any
3   provision that says -- that says this, the egress has to
4   be continuous?
5       A. There is a section. I guess the assumption is
6   that -- and it's -- it -- I would have to go back and see
7   if I could track down the section, but the assumption of
8   all codes is that the floors are level. That's why you
9   can walk across the lobby here and not end up with
10  changes in floor level, even though it might be
11  convenient, and have tripping hazards.
12  Q. That's an assumption of the code, but it's not a
13  provision of the code.
14      A. Well, it is -- they have accepted the flatness
15  at doorways. So they've given you -- they've allowed
16  that there be a half-inch exception to flat when you walk
17  through a door. I mean, otherwise you wouldn't be
18  allowed that, otherwise you would have to have a flat
19  level means of travel through doorways, which is
20  impractical.
21  Q. I'm not arguing what's smart design or what's
22  good design.
23      A. Sure.
24  Q. But is there a provision that says we're going
25  to have flatness? Is there a specific provision?

Page 40

1       A. I would say that, yes, there probably is. I
2   don't have access to it here today. But I can tell you
3   for sure that it is understood.
4   Q. How about in this particular case at the Cattle
5   Company, the curb out to the parking lot, that appears to
6   be out of flat, that's an exception to the flatness of
7   where people walk?
8       A. You're allowed to have rises at stairs and curbs
9   up to seven inches. So I'm -- I mean, so between your
10  street and the typical height for a curb is six inches,
11  but the code allows for stairways a maximum rise or
12  height of seven inches.
13  Q. Is there a minimum rise or height?
14      A. I think it's four. I would have to go back and
15  look. But, yes, they do have a maximum/minimum for the
16  same reason, they don't want -- there is a certain level
17  that people don't perceive well. And so you -- tripping
18  becomes a problem, too, so they define a minimum stair
19  riser height and a maximum.
20  Q. When you say there's a point people don't
21  perceive well, what is the basis of that opinion? What
22  background --
23      A. That's just general conversation with my
24  colleagues over the years.
25  Q. Any colleagues with particular psychological

Page 41

1   training?
2       A. No, just general conversation.
3   Q. Engineering colleagues?
4       A. And architectural colleagues.
5   Q. Is there a minimum height for curbs? Is that
6   the same as stairs, or --
7       A. You know, I don't know if there's a minimum
8   height. The Muni has standards for curbs. You can have
9   a rolled curb. You can have a curb for handicapped
10  access. And the -- I believe the -- I'd have to go take
11  a look at the typical detail, I think it probably rolls
12  down to about an inch or half-an-inch, something like
13  that. Those are just standard details that are put out
14  by the Muni.
15      And so the six inches works well. That's
16  usually the curb that we adopt and use in our projects.
17  Although, as I said, they have specific details for --
18  approved details for a handicapped access from a sidewalk
19  to a street.
20  Q. I think we're just about done. Just a second
21  here.
22      You would agree this sidewalk is not a landing
23  or a threshold; is that a fair statement?
24      A. Uh-huh.
25  Q. That's a yes?

Page 42

1   A. Yes. Beyond the swing of the door, it's not.
2   Q. Okay. I don't have any further questions.
3                EXAMINATION
4   BY MR. JURASEK:
5   Q. Just one quick, regardless if there's an actual
6   code violation, does this design of this sidewalk or its
7   current condition create a trip hazard?
8         MR. EARNHART: Foundation.
9         THE WITNESS: In my opinion, yes.
10        MR. JURASEK: No further questions.
11        MR. EARNHART: All right.
12           (Whereupon, the deposition was concluded
13           and reading and signing of said deposition
14           was not waived.)
15
16
17
18
19
20
21
22
23
24
25

Page 43

1           WITNESS CERTIFICATE
    MARLENE MEYER VS. ARG ENTERPRISES CASE NO. 3:05-cv-00239
2   RICHARD BUTTON          Taken Septmber 28, 2006
    I hereby certify that I have read the foregoing
3   deposition and accept it as true and correct, with the
    following exceptions:
4   ==========================================================
5   Page   Line          Reason For Change
6   ==========================================================
7   _____
8   _____
9   _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  Date Read         (Sign name here)
23
24  (Use additional paper to note corrections as needed,
25  dating and signing each one.)

Page 44

1
2            REPORTER'S CERTIFICATE
3
4
5   I, Britney E. Chonka, Court Reporter, hereby
6   certify:
7       That I am a Court Reporter for Alaska Stenotype
8   Reporters and Notary Public in and for the State of
9   Alaska at large. I certify Hereby that the forgoing
10  transcript is a true and correct transcript of said
11  proceedings taken before me at the time and place stated
12  in the caption therein.
13      I further certify that I am not of counsel to
14  either of the parties hereto or otherwise interested in
15  said cause.
16      In witness whereof, I hereunto set my hand and
17  affix my official seal this 10th day of October, 2006.
18
19
20           _____
21           BRITNEY E. CHONKA, REPORTER
22           Notary Public - State of Alaska
23
24
25

Exhibit _B_

Page _6_ of _6_ Pages

# RICHARD C. BUTTON, P.E.

## Expert Witness Qualifications

I, Richard C. Button, P.E. have conducted numerous investigations and evaluations into both residential and commercial building envelope failure, i.e., condensation problems, chronic roof leaks, or roof, floor and wall failures. I have provided expert witness testimony on several occasions for slip and fall accidents. I have been approved as a qualified expert witness and have testified before the Alaska State Courts on at least two occasions.

I have been a licensed engineer by the State of Alaska since 1981.

In 1973, I graduated from the University of Washington (Seattle, Washington) with a Bachelor of Science degree in Civil Engineering. I have over 30 years of professional engineering experience (29 years of which have been in Alaska).

I am the founding principal of EEIS Consulting Engineers, Inc., an Alaska corporation established in 1985.

EEIS Consulting Engineers, Inc. (EEIS) has been involved as either the prime consultant, structural consultant, or project engineer on a variety of structural and civil engineering projects in Alaska.

My services have included structural engineering for residential, commercial, and industrial design in wood, steel, concrete and masonry. I provide design management on all major EEIS projects. In that capacity I participate in the conceptual design and layout of projects and then coordinate the various disciplines during project design.

Exhibit C

Page 1 of 3 Pages

RICHARD C. BUTTON, P.E.
EXPERT WITNESS QUALIFICATIONS

I have been involved in the following cases in the last four years:

1) Brittain and Pentlarge - Scott vrs Mann    Reviewed file, discussed case. Case settled in mediation.

2) Brittain and Pentlarge - Gillespie vrs. Arctic Structures    Wrote report of opinion. Case pending.

3) Stone and Jenicek - Camille vrs Omni    Reviewed information and discussed case. Case pending.

4) LeGros, Buchanan & Paul - Godwin vrs Pacific Rim Property    Report and deposition. Case pending.

5) Bettine – Powell vrs Durango    Visited site, provided report, was deposed. Case pending.

6) Brittain and Pentlarge – Miller vrs Schwamm    Reviewed documentation of accident, did structural calclations, proivded written report. Case pending.

7) Stone and Jenicek - Turney vrs Haynes    Visited site, provided written report.

8) Stone and Jenicek - Wood vrs Torrance vrs Little Bear Construction    Visited site, provided verbal opinion.

9) Brittain and Pentlarge - Meyer vrs The Cattle Company    Visited site, provided report.

10) Pentlarge - Wright vrs Russian Jack Apartments    Visited site. Will provide report. Case pending.

11) Stone and Jenicek - Wasilla Case    Visited site, provided drawings / cross section of site and verbal opinion.

12) Stone and Jenicek - Alexie vrs Dong Joon Lim    Visited site and provided verbal opinion. Case pending.

Exhibit _C_
Page _2_ of _3_ Pages

RICHARD C. BUTTON, P.E.
EXPERT WITNESS QUALIFICATIONS

13) Pentlarge – Adrian vrs Alyeska Prince Hotel    Visited site and provided written report. Was deposed.

14) Bucholdt – Moell vrs Matsu Borough    Visited site and provided written report.

15) Pentlarge – Breeze vrs Sinclair    Visited site and provided written report.

16) Pentlarge – Byers vrs Century Theaters    Wrote letter of professional opinion.

17) Stone and Jenicek – Cobb vrs CIRI vrs Waterworks    On hold.

        Richard C. Button, P.E. signature and seal at left has
        SUBSCRIBED AND SWORN TO before me this ____ day
        of _____, 2006, AT Anchorage, Alaska.

        Notary in and for the State of Alaska
        My commission expires:

Exhibit C
Page 3 of 3 Pages



DEF 00002
Meyer v. Cattle Co.

Exhibit _D_
Page _1_ of _1_ Pages