May. 9. 2005  8:27AM    EEIS CONSULTING ENGINEERS, INC    No.



FAX TRANSMITTAL SHEET
FAX NO. (907) 272-1288

**DATE:** May 9, 2005                **TOTAL PAGES** 8
                                      (incl. cover sheet):

**ATTN:** Bob Jurasek          **FAX:** (907) 276-8000 RECEIVED PLG

**COMPANY:** Pentlarge Law Group

**FROM:** Rick Button

**SUBJECT:** Meyer vrs Cattle Company          **REF #:** 205005faxjurasek
                                                           050905

**REMARKS:**
Bob—I am in class all day, but will call your office around noon to see if you see anything else
you would like me to cover.

If there is something else you want me to cover, I will make them Monday evening.  I can call
you when I get out of class.  I will also include photos with the final report.

                          Thanks   Rick

PLAINTIFF
EXHIBIT NO. 2
ADMITTED ☐
3:05-CV-00239 TMB
(CASE NUMBER)

ORIGINAL IS BEING SENT BY MAIL:        YES _____        NO    X

If you did not receive the correct number of pages,
please contact us at (907) 258-3231.  Thank you.

# DRAFT

May 9, 2005

Pentlarge Law Group
1400 West Benson Blvd. Suite 550
Anchorage, AK 99503-3690

Attn:  Robert Jurasek
Subject:   Meyer vrs Cattle Company

Dear Mr. Jurasek:

The purpose of this letter is to give you my professional opinion on the causes of an accident that happened on or about January 7, 2005.  I have reviewed the photgraphs you furnished on the case.

It is my understanding that Marlene Meyer was leaving the Cattle Company when she tripped and fell on a section of the concrete sidewalk leading from the Cattle Company to the parking lot.   The fall was caused because one section of the sidewalk had raised or settled relative to the other.  This left an exposed vertical surface in the walkway path.  It was not clear whether the difference was due to frost heave or settling of sections of the sidewalk.  The net difference between the sections varied between ½ and ¾ of an inch.

References to acceptable changes in elevation of walking surfaces have been part of building codes for years.  These references usually place limits on the height of thresholds of doors.  This is because it is assumed that walking surfaces will be flat, while doors require raised thresholds to seal against weather and water.

Perhaps the most widely accepted code in the western states was the Uniform Building Code.  It recently changed names and has been called the International Building Code since 2000.  Section 3304.h of the 1985 Edition of the Uniform Building Code required that the maximum difference between the threshold of a door and floor on either side of it be not more than ½ inch if handicapped access is required.  Section 1008.1.5 of the 2003 edition of the International Building Code maintains the ½ inch maximum difference at doors and also requires that changes in elevation greater than ¼ of an inch be beveled to a slope not greater than one unit vertical in two units horizontal.

EXHIBIT "___"

Page ___ of ___

F:\Secretary.CONSULTING\2005\205005\205005report.doc

MEYER VRS CATTLE CO
PAGE 2


The Uniform Federal Accessibility Standards also comment on changes in elevation in ground and floor surfaces. Under section 4.5.2, Changes in Level, the standard says changes in level up to ¼ of an inch may be vertical without edge treatment. Changes in level between ¼ and ½ inch shall be beveled wth a sloped no greater than 1 vertical in 2 horizontal. Changes in level greater that ½ inch shall be accomplished by means of a ramp.

The change in elevation between sections of the side walk at the Cattle Company exceed ½ inch in elevation at the location where Ms. Meyers fell. This change does not comply with the intent of either the older versions of the Uniform Building Code or the current 2003 International Building Code. The change in elevation does not meet the requirements of the Uniform Federal Accessibility Standards.

If you have any questions, please do not hesitate to call.

Sincerely,



Richard C. Button, P.E.
Principal

RCB/rb


EXHIBIT "2"
Page 3 of 8

May. 9. 2005  8:28AM    EEIS CONSULTING ENGINEERS, INC    No. 2757   P. 4

# UNIFORM BUILDING CODE

3304

660



UNIFORM
BUILDING
CODE

1985 Edition

EXHIBIT 2

Page 4 of 8

*A Member of the International Code Family*™



ICC

INTERNATIONAL
CODE COUNCIL

# INTERNATIONAL

# BUILDING

# CODE®



# 2003

**MEANS OF EGRESS**

mm) below the finished floor level of the adjacent interior space of the dwelling unit.

**1008.1.5 Landings at doors.** Landings shall have a width not less than the width of the stairway or the door, whichever is the greater. Doors in the fully open position shall not reduce a required dimension by more than 7 inches (178 mm). When a landing serves an occupant load of 50 or more, doors in any position shall not reduce the landing to less than one-half its required width. Landings shall have a length measured in the direction of travel of not less than 44 inches (1118 mm).

**Exception:** Landing length in the direction of travel in Group R-3 as applicable in Section 101.2 and Group U and within individual units of Group R-2 as applicable in Section 101.2, need not exceed 36 inches (914 mm).

**1008.1.6 Thresholds.** Thresholds at doorways shall not exceed 0.75 inch (19.1 mm) in height for sliding doors serving dwelling units or 0.5 inch (12.7 mm) for other doors. Raised thresholds and floor level changes greater than 0.25 inch (6.4 mm) at doorways shall be beveled with a slope not greater than one unit vertical in two units horizontal (50-percent slope).

**Exception:** The threshold height shall be limited to 7 3/4 inches (197 mm) where the occupancy is Group R-2 or R-3 as applicable in Section 101.2, the door is an exterior door that is not a component of the required means of egress and the doorway is not on an accessible route.

**1008.1.7 Door arrangement.** Space between two doors in series shall be 48 inches (1219 mm) minimum plus the width of a door swinging into the space. Doors in series shall swing either in the same direction or away from the space between doors.

**Exceptions:**

1. The minimum distance between horizontal sliding power-operated doors in a series shall be 48 inches (1219 mm).

2. Storm and screen doors serving individual dwelling units in Groups R-2 and R-3 as applicable in Section 101.2 need not be spaced 48 inches (1219 mm) from the other door.

3. Doors within individual dwelling units in Groups R-2 and R-3 as applicable in Section 101.2 other than within Type A dwelling units.

**1008.1.8 Door operations.** Except as specifically permitted by this section egress doors shall be readily openable from the egress side without the use of a key or special knowledge or effort.

**1008.1.8.1 Hardware.** Door handles, pulls, latches, locks and other operating devices on doors required to be accessible by Chapter 11 shall not require tight grasping, tight pinching or twisting of the wrist to operate.

**1008.1.8.2 Hardware height.** Door handles, pulls, latches, locks and other operating devices shall be installed 34 inches (864 mm) minimum and 48 inches (1219 mm) maximum above the finished floor. Locks

used only for security purposes and not used for normal operation are permitted at any height.

**1008.1.8.3 Locks and latches.** Locks and latches shall be permitted to prevent operation of doors where any of the following exists:

1. Places of detention or restraint.
2. In buildings in occupancy Group A having an occupant load of 300 or less, Groups B, F, M and S, and in churches, the main exterior door or doors are permitted to be equipped with key-operated locking devices from the egress side provided:
   2.1. The locking device is readily distinguishable as locked,
   2.2. A readily visible durable sign is posted on the egress side on or adjacent to the door stating: THIS DOOR TO REMAIN UNLOCKED WHEN BUILDING IS OCCUPIED. The sign shall be in letters 1 inch (25 mm) high on a contrasting background.
   2.3. The use of the key-operated locking device is revokable by the building official for due cause.
3. Where egress doors are used in pairs, approved automatic flush bolts shall be permitted to be used, provided that the door leaf having the automatic flush bolts has no doorknob or surface-mounted hardware.
4. Doors from individual dwelling or sleeping unit of Group R occupancies having an occupant load of 10 or less are permitted to be equipped with a night latch, dead bolt or security chain, provided such devices are openable from the inside without the use of a key or tool.

**1008.1.8.4 Bolt locks.** Manually operated flush bolts or surface bolts are not permitted.

**Exceptions:**

1. On doors not required for egress in individual dwelling units or sleeping units.
2. Where a pair of doors serves a storage or equipment room, manually operated edge- or surface-mounted bolts are permitted on the inactive leaf.

**1008.1.8.5 Unlatching.** The unlatching of any leaf shall not require more than one operation.

**Exception:** More than one operation is permitted for unlatching doors in the following locations:

1. Places of detention or restraint.
2. Where manually operated bolt locks are permitted by Section 1008.1.8.4.
3. Doors with automatic flush bolts as permitted by Section 1008.1.8.3, Exception 3.
4. Doors from individual dwelling units and guestrooms of Group R occupancies as permitted by Section 1008.1.8.3, Exception 4.

EXHIBIT "___"
Page ___ of ___

May. 9. 2005. 8:30AM    EEI CONSULTING ENGINEERS, INC    No. 2757    P. 7



# Uniform Federal Accessibility Standards

GENERAL SERVICES
ADMINISTRATION

DEPARTMENT OF DEFENSE

DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT

U.S. POSTAL SERVICE

EXHIBIT " 27 "

Page 7 of 8

## 4.4 Protruding Objects



(e)

**Example of Protection around Wall-Mounted Objects and Measurements of Clear Widths**

**Fig. 8**
**Protruding Objects (Continued)**

## 4.5 Ground and Floor Surfaces.

**4.5.1\* General.** Ground and floor surfaces along accessible routes and in accessible rooms and spaces, including floors, walks, ramps, stairs, and curb ramps, shall be stable, firm, *slip-resistant*, and shall comply with 4.5.

**4.5.2 Changes in Level.** Changes in level up to 1/4 in (6 mm) may be vertical and without edge treatment (see Fig. 7(c)). Changes in level between 1/4 in and 1/2 in (6 mm and 13 mm) shall be beveled with a slope no greater than 1:2 (see Fig. 7(d)). Changes in level greater than 1/2 in(13 mm) shall be accomplished by means of a ramp that complies with 4.7 or 4.8.

**4.5.3\* Carpet.** If carpet or carpet tile is used on a ground or floor surface, then it shall be securely attached; have a firm cushion, pad, or backing or no cushion or pad; and have a level loop, textured loop, level cut pile, or level cut/uncut pile texture. The maximum pile height shall be 1/2 in (13 mm). Exposed edges of carpet shall be fastened to floor surfaces and have trim along the entire length of the exposed edge. Carpet edge trim shall comply with 4.5.2. *If carpet tile is used on an accessible ground or floor surface, it shall have a maximum combined thickness of pile, cushion, and backing height of 1/2 in (13 mm) (see Fig. 8(f)).*

**4.5.4 Gratings.** If gratings are located in walking surfaces, then they shall have spaces no greater than 1/2 in (13 mm) wide in one direction (see Fig. 8(g)). If gratings have elongated openings, then they shall be placed so that the long dimension is perpendicular to the dominant direction of travel (see Fig. 8(h)).

EXHIBIT
Page ___ of ___

