IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARLENE G. MEYER,<br><br>             Plaintiff,<br><br>      vs.<br><br>ARG ENTERPRISES, INC. aka<br>STUART ANDERSON'S CATTLE<br>COMPANY RESTAURANTS,<br><br>             Defendant. | Case No. 3:05-cv-000239   TMB<br><br><br>O R D E R |

## I.  MOTION PRESENTED

Defendant ARG Enterprises, Inc. ("ARG") seeks partial summary judgment on Plaintiff's claim of negligence per se.  Plaintiff has filed an opposition and Defendant has filed its reply.  The Court has sought and received supplemental briefing regarding the basis for Plaintiff's claim.  Defendant has also filed a related motion in limine to exclude the testimony of Plaintiff's expert, who would testify regarding certain alleged building code violations, which are at the heart of Plaintiff's negligence per se claim.  The parties have fully briefed this issue.  Neither party has requested oral argument and the Court has determined that oral argument would not assist in deciding the motions at issue.

## II. BACKGROUND

The facts relevant to Defendant's motions are straightforward and are largely undisputed.  Nevertheless, as Defendant is the moving party, the Court will cull this recitation of the facts from Plaintiff's filings.

On the afternoon of January 7, 2005, Plaintiff Marlene Meyer ("Meyer") had lunch at Defendant's restaurant, Cattle Company.  After exiting the building, Meyer tripped and fell on a section of concrete sidewalk leading from the Cattle Company to the parking lot.  According to Plaintiff's expert, the fall was caused because one section of the sidewalk had raised or settled

relative to the other, creating a lip of between one half and three quarters of an inch between the sections of sidewalk.  Defendant has stated, and Plaintiff does not dispute, that the site of the uneven sidewalk is about fifty feet down the sidewalk from the main doors to the restaurant.[1]

Plaintiff originally brought this action in Alaska state court, and Defendant ARG removed to federal district court.  In her complaint, Plaintiff alleges three claims against ARG: (1) negligence, (2) negligence per se and (3) failure to warn.  Only Plaintiff's claim of negligence per se is at issue here.  This claim rests on Plaintiff's contention that the uneven sidewalk on Defendant's property violates applicable law.

### III.  DISCUSSION

**A.  Defendant's Motion for Partial Summary Judgment on Claim of Negligence Per Se**

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law.[2]

Under Alaska law, violation of a legislative enactment may constitute negligence per se.[3] Thus, "[t]he negligence per se doctrine provides that a person who indisputably violates a statute must be found negligent."[4]  Of course, once an applicable law has been identified, the court must still consider a number of factors regarding the nature of the legal enactment or regulation, and its relationship to the type of harm caused.  In *Ferrell v. Baxter*,[5] the Alaska Supreme Court adopted the principles of the Restatement (Second) of Torts concerning negligence per se:

> 'The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

---

[1] In an interrogatory answer, Plaintiff states that she "walked out the door along the sidewalk beside the building and tripped on a lip of the sidewalk . . . ."

[2] FED R. CIV. P. 56(c); *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*).

[3] *McLinn v. Kodiak Elec. Ass'n, Inc.*, 546 P.2d 1305 (Alaska 1975).

[4] *Hummel v. Ardinger*, 982 P.2d 727, 733-34 (Alaska 1999).

[5] 484 P.2d 250, 263 (Alaska 1971).

>   (a) to protect a class of person which includes the one whose interest is invaded, and
>   (b) to protect the particular interest which is invaded, and
>   (c) to protect that interest against the kind of harm which has resulted, and
>   (d) to protect that interest against the particular hazard from which the harm results."[6]

Thus, the Court will first consider whether Defendant's alleged conduct – creating or failing to repair the one half to three-quarter inch difference in elevation between sections in its sidewalk – violated the requirements of a legislative enactment or administrative regulation. For any such violation, the Court will then consider the factors adopted from the Restatement in order to determine whether the violation could constitute grounds for finding negligence per se.

At various stages in this litigation, Plaintiff's articulation of the regulatory or building code violation she alleges was violated has changed substantially. Consequently, the Court has painstakingly reviewed Plaintiff's various filings with this Court in order to determine whether Plaintiff has in fact identified any regulation on which its negligence per se claim could be properly based. The Court has found no such regulation.

In her complaint, Plaintiff describes the basis for her claim of negligence per se as follows:

> Pursuant to the International Building Code, Section 1008.1.5, defendant and/or their agents had a duty to maintain the walk areas so that a ½ inch maximum difference at door exists and also requires that changes in elevation that are greater than 1/4 of an inch to be beveled to a slope not greater than one unit vertical in two units horizontal.

The complaint further states that "Plaintiff's fall and injuries were the . . . result of defendant's negligence . . . in not maintaining the walkway, including but not limited to the International Building Code, Section 1008.1.5."

ARG does not dispute that Alaska has adopted the International Building Code ("IBC"), and that the Stuart Anderson's Cattle Company Restaurant in question would be governed by IBC regulations. However, the section of the IBC cited by Plaintiff, section 1008.1.5, does not in fact contain any of the requirements that Plaintiff attributes to it. Rather, section 1008.1.5 discusses the required dimensions of landings at doors:

---

[6] *Id.* (quoting Restatement (Second) of Torts § 286 (1965)).

> **1008.1.5  Landings at doors.**  Landings shall have a width not less than the width of the stairway or the door whichever is greater.  Doors in the fully open position shall not reduce a required dimension by more than 7 inches (178 mm).  When a landing serves an occupant load of 50 or more, doors in any open position shall not reduce the landing to less than one-half its required width.  Landings shall have a length measured in the direction of travel of not less than 44 inches (1118 mm.)[7]

The uneven sidewalk at Defendant's restaurant does not violate this portion of the IBC.

Given the description of the alleged IBC requirements in the complaint, it appears Plaintiff intended to reference sections 1008.1.4 and 1008.1.6 of the IBC.  In fact, in subsequent filings Plaintiff identifies both of these sections as bases for its negligence per se claim.  However, the Court finds that these sections of the IBC are equally inapplicable to the portion of sidewalk at issue.  Sections 1008.1.4 and 1008.1.6 state:

> **1008.1.4  Floor elevation.**  There shall be a floor or landing on each side of a door.  Such floor or landing shall be at the same elevation on each side of the door.  Landings shall be level except for exterior landings, which are permitted to have a slope not to exceed 0.25 unit vertical in 12 units horizontal (2 percent slope).[8]
>
> **1008.1.6 Thresholds.**  Thresholds at doorways shall not exceed 0.75 inch (19.1 mm) in height for sliding doors serving dwelling units or 0.5 inch (12.7 mm) for other doors.  Raised thresholds and floor level changes greater than 0.25 inch (6.4 mm) at doorways shall be beveled with a slope not greater than one unit vertical in two units horizontal (50 percent slope).[9]

It is clear on the face of these provisions that they apply only to doorways and the areas immediately surrounding them.[10]  This conclusion is further supported by the fact that, like

---

[7]   IBC § 1008.1.5.

[8]   IBC § 1008.1.4.

[9]   IBC § 1008.1.6.

[10]   Any argument that the requirements found in these provision should be more broadly applied is belied by the commentary attached to each subsection of the IBC.  That the purpose of these provisions is to prevent hazards particular to doorways is made clear in the commentary to section 1008.1.4:

> Changes in floor surface elevation at a door, however small, often are slip or trip hazards.  This is because persons passing through a door, including those who are physically disabled, usually do not expect changes in floor surface elevation or are not able to recognize them because of the intervening door leaf.  Under emergency

section 1008.1.5, these sections fall under the general heading "Doors, Gates and Turnstiles," which is the subject of IBC section 1008 generally.[11] In this case, neither party contends that the section of sidewalk at issue constituted a floor or landing on either side of a door. Indeed, Plaintiff stated in her deposition that she "walked out the door along the sidewalk beside the building and tripped on a lip of the sidewalk," and Plaintiff's expert agreed that the sidewalk was neither a landing nor a threshold and that those terms did not apply to areas "beyond the swing of the door." Defendant has estimated that Plaintiff's fall occurred approximately fifty feet from the door to the restaurant, a fact Plaintiff does not dispute. Thus, no portion of section 1008 can be found applicable to the portion of sidewalk where Plaintiff fell.

Plaintiff abruptly changes course in her opposition to Defendant's motion for partial summary judgment. In her opposition, Plaintiff argues that although Defendant has distinguished the IBC section 1008 requirements, Defendant has not addressed the Federal Accessibility Standards ("USFAS") or the Anchorage Municipal Codes. However, in Plaintiff's supplemental briefing on the subject, Plaintiff's expert clarifies that "[t]he USFAS was specifically written to address accessibility requirements for properties with Federal interest" and therefore "[i]t is not applicable to this case." The Court therefore moves on to Plaintiff's claim that Defendant's sidewalk was in violation of Anchorage Municipal Code Section 23.15.1106.4.4 and 23.15.1106.6. It appears that Plaintiff simply pulled these code provisions from a website without verifying whether they were ever adopted by the Municipality. Defendant points out in

---

> conditions, a fall in a doorway could result not only in injury to the falling occupant but also interruption of orderly egress by other occupants.

The commentary explains what is already obvious through common sense – that people do not expect a drop or rise at the point of a door, and hence they would be more likely to trip over them. There is no reason to believe these requirements were intended to be applied to other floor surfaces.

[11] IBC § 1008.

its reply that these code provisions have never been adopted, and Plaintiff has presented no contrary support.[12]

Finally, in Plaintiff's supplemental briefing, Plaintiff's expert also relies on American National Standards Institute ("ANSI") Standard A117.1, which he contends was effectively adopted by the Municipality of Anchorage since it is incorporated by reference in the IBC. Plaintiff refers the Court to the following provisions of ICC/ANSI A117.1-98:

> **303.1 General.** Changes in level ground floor or ground surfaces shall comply with Section 303.
>
> **303.2 Vertical.** Changes in level of 1/4 inch (6 mm) high maximum shall be permitted to be vertical.
>
> **303.3 Beveled.** Changes in level between 1/4 inch (6 mm) high minimum and ½ inch (13 mm) high maximum shall be beveled with a slope not steeper than 1:2.
>
> **303.4 Ramped.** Changes in level greater than ½ inch (13 mm) shall be ramped and shall comply with Section 405 or 406.

Although Defendant claims that it has found no evidence of its incorporation into the IBC, the Court has determined that the requirements of ICC/ANSI A117.1 are explicitly incorporated into IBC section 1101. Section 1101.2 states that "[b]uildings and facilities shall be designed and constructed to be accessible in accordance with this code and ICC A117.1."[13] Thus, the Court will treat the requirements of A117.1 as applicable to Defendant's premises.[14]

---

[12]   Even if they had been adopted and were in force, it does not appear that the language cited by Plaintiff could support Plaintiff's claim of negligence per se. First, the language of the particular provisions cited by Plaintiff, as well as the surrounding provisions, are aimed at ensuring handicap access of a certain quality. There is no indication that *all* access to a building must meet these requirements, and Defendant claims that its restaurant has other handicap accessible entrances. Furthermore, since the purpose of the regulation is to provide access to handicap individuals (not to avoid tripping hazards for non-handicap individuals), such a provision could not provide a basis for Plaintiff's negligence per se claim. The court also addresses this issue in the context of examining Plaintiff's reliance on American National Standards Institute (ANSI) Standard A117.1.

[13]   IBC § 1101.2.

[14]   The Court is not prepared at this time to conclude definitively what, if any, portion of the IBC is applicable to Plaintiff's property. Because the Court concludes that Plaintiff's negligence per se claim fails even assuming the applicability of the IBC and A117.1, the Court need not reach this issue.

IBC section 1101 and ANSI 117.1 lay out the requirements whereby facilities must be made accessible to physically disabled persons. Section 1101.1 states that "[t]he provisions of this chapter shall control the design and construction of facilities for accessibility to physically disabled persons."[15] Section 1101 and ANSI 117.1 do not, however, require that every means of egress be accessible to disabled persons or that every walking surface meet its requirements. Defendant asserts that its restaurant has another entrance that is fully accessible under the requirements set forth by the IBC and ANSI 117.1. Plaintiff does not contest this fact, and has made no further showing why the particular portion of sidewalk at issue must comply with the requirements of ANSI 117.1.[16]

More importantly, even if the sidewalk were in violation of ANSI 117.1, violation of this particular regulation cannot form the basis for Plaintiff's claim of negligence per se. Under Alaska law, a claim of negligence per se must be premised on "a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part . . . to protect a class of person which includes the one whose interest is invaded."[17] ANSI 117.1 clearly states that "[t]he intent of these sections of the standard is to allow a person with a disability to independently get to, enter, and use a site, facility, building, or element."[18] There is no indication that the purpose of ANSI 117.1 includes preventing injury to Plaintiff, who is not physically disabled. Comparing the purpose of the regulation and the type of harm incurred by Meyer, it is

---

[15]   IBC § 1101.1.

[16]   In addition, Defendant argues that the regulations in question apply to new designs and construction, and that old facilities are grandfathered in. Defendant's support for this proposition includes Anchorage Municipal Code 21.15.1101.2. Plaintiff has not presented any argument to the contrary.

[17]   *Ferrell*, 484 P.2d at 263 (quoting Restatement (Second) of Torts § 286 (1965)) (internal quotes omitted).

[18]   ANSI 117.1-98 § 101.

clear that none of the Restatement requirements are met, and that Plaintiff's claim of negligence per se based on these regulations fails.[19]

**B.     Defendant's Motion in Limine to Exclude Testimony by Plaintiff's Expert**

Having found that Defendant's motion for partial summary judgment should be granted, the Court now considers Defendant's motion in limine to exclude testimony by Plaintiff's expert, Richard Button ("Button"). Rule 702 of the Federal Rules of Evidence permits expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[20] Plaintiff has asserted that Button's testimony would serve the following purpose:

> He will provide explanations of the appropriate building codes, their purposes, and the reasons for having compliance. His opinion will not be on simple negligence alone but will involve a detailed explanation of the building codes and accessibility codes and why they exist and the purpose they serve, including to prevent trip hazards as addressed in his deposition.

The Court finds, however, that Button's testimony would not assist the jury to understand the evidence or determine a fact at issue. Having dismissed Plaintiff's claim of negligence per se, the building codes which were to be the subject of Button's testimony are no longer at issue.[21] Furthermore, the condition of the sidewalk and any questions regarding the cause of Meyer's fall are well within the common knowledge and experience of the jury and do not require expert

---

[19]     The purpose of the regulation must also be exclusively or in part "(b) to protect the particular interest which is invaded, and (c) to protect that interest against the kind of harm which has resulted, and (d) to protect that interest against the particular hazard from which the harm results." *Ferrell*, 484 P.2d at 263 (quoting Restatement (Second) of Torts § 286 (1965)) (internal quotes omitted).

[20]     Fed. R. Evid. 702.

[21]     To the extent that Button's proposed testimony could provide any assistance in understanding the reasonableness condition of the sidewalk, the Court finds that this borderline value is outweighed by the danger that expert testimony might unduly influence the jury on the ultimate issue. *See, e.g., Kline v. Ford Motor Co., Inc.*, 523 F.2d 1067, 1070 (9th Cir. 1975) ("If the court decides that the help will be borderline or ineffective, it can decline to admit the opinion.")

testimony.[22] Thus, the Court concludes that the testimony of Plaintiff's expert Button should be excluded.

## IV.  CONCLUSION

Having found that there exists no genuine issues of material fact and that Defendant is entitled to a judgment as a matter of law, the Court will enter summary judgment in favor of the Defendant on the claim of negligence per se.  In addition, the proposed testimony of Plaintiff's expert shall be excluded.

IT IS THEREFORE ORDERED:

The motion for partial summary judgment on Plaintiff's claim of negligence per se at Docket No. 28 is GRANTED.  Defendant's motion in limine at Docket No. 27 is also GRANTED.  In addition, the motion Defendant originally filed at Docket 26, which was later supplanted by the motions described above, is DENIED as moot.

Dated at Anchorage, Alaska, this 28th day of  September, 2007.

/s/ Timothy Burgess
TIMOTHY M. BURGESS
U. S. DISTRICT JUDGE

---

[22]   The fact that the issues relating to Meyer's tripping on the sidewalk are within the understanding of the average juror weighs against allowing expert testimony.  *See United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. 1993) ("Our [Rule 702] inquiry has generally focused upon whether the expert testimony improperly addresses matters within the understanding of the average juror."); *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1038 n.60 (Alaska 2002) (noting that expert testimony is not always required, "especially in non-technical situations where negligence is evident to lay people") (internal quotations omitted).